(75 Misc. Rep. 268.)

## PULIS v. STEWART et al.

(Supreme Court, Special Term, Onondaga County. January, 1912.)

1. NEGLIGENCE (§ 61*)—PROXIMATE CAUSE.
    There may be two or more proximate causes of an accident if each can be said to have been an efficient one, without which the injury could not have been sustained.

    [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 74, 75; Dec. Dig. § 61.*]

2. MASTER AND SERVANT (§ 129*)—INJURIES TO SERVANT—PROXIMATE CAUSE.
    In an action for injuries to an employé by falling down an air shaft, held, that the unguarded shaft was not the sole proximate cause of the accident.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257–263; Dec. Dig. § 129.*]

3. MASTER AND SERVANT (§ 121*)—INJURIES TO SERVANT—NEGLIGENCE—GUARDING DANGEROUS PLACE.
    It was not negligence to leave an air shaft temporarily unguarded during construction of a building where the workmen at the time were attaching lath to the beams forming the air shaft and installing conduits through the hole, for which purpose it had been left.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 228–231; Dec. Dig. § 121.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. MASTER AND SERVANT (§ 228*)—INJURIES TO SERVANT—CONTRIBUTORY NEG-
LIGENCE—STATUTES.

The Employers' Liability Act (Consol. Laws 1909, c. 31, §§ 200–204) does
not relieve plaintiff from showing that he at the time of the accident was
free from contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
670, 671; Dec. Dig. § 228.*]

5. MASTER AND SERVANT (§ 217*)—INJURIES TO SERVANT—ASSUMPTION OF RISK
—EVIDENCE.

Where a servant knew that an air shaft in a building in which he was
working was unguarded, and appreciated the dangers incident to his work,
he assumed the risk of his employment, and cannot recover for injuries
received by falling down the shaft.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–
600; Dec. Dig. § 217.*]

Action by John Pulis against James C. Stewart and Alexander M.
Stewart. Verdict for plaintiff, and motion for new trial granted.
Order affirmed (134 N. Y. Supp. 1144).

Charles P. Wortman, for plaintiff.
Bond & Schoeneck, for defendants.

MERRELL, J. This is a motion to set aside the verdict of a jury,
rendered at the November Onondaga Trial Term, awarding the plain-
tiff the sum of $15,000 damages. The action was brought under the
Employers' Liability Act, the plaintiff alleging that his damages were
sustained by reason of the failure of the defendants to furnish him a
reasonably safe place in which to work.

The facts, as disclosed by the evidence, are, briefly, as follows:

The defendants were copartners, engaged as contractors in the erec-
tion of the new Onondaga Hotel, a fireproof structure in the city of
Syracuse, N. Y. The structural work of the building was of steel
and reinforced concrete, and had progressed to an extent that the
steel framework was being placed on the tenth and eleventh floors
of the building, and the cement floors had been laid up to the eighth
floor. The floors from the fourth upward were what is known among
builders as "typical floors"; each of said floors in arrangement being
substantially a duplicate of the others. Through each of these dupli-
cate floors were holes or openings about 28 inches by 7 feet in dimen-
sions, there being about 12 of such openings in each floor, which were
designed for the passage of electric conduits, steam heating pipes,
plumbing, and ventilation. These holes or shafts were finally to be
incased with fireproof walls; but at the time of plaintiff's injury, at
the point where he was at work, there was simply the open hole in the
floor, the construction of the shaft not having proceeded as high as
the seventh floor, upon which he was engaged.

The plaintiff, a carpenter of 15 years or more experience, was en-
gaged in erecting what is known as "door bucks," which were two
four by four timbers sufficiently far apart to fit the frame of the door-
way leading into a closet, and were set perpendicularly upon the
cement flooring and extended to the cement ceiling above, with a
cross-piece at about the height of the door. These perpendicular

bucks were placed about 18 inches or 2 feet from one of the air shafts. The plaintiff, in the prosecution of his work, used a stepladder about four feet and a half high, built of inch boards, one side of the ladder having four steps about five inches wide, besides a platform on top of perhaps ten inches in width. The other side of the stepladder consisted of three slats beneath the platform. On the day in question the stepladder was placed, the slat side resting upon the steel beam forming one end of the air shaft, in the doorway formed by the bucks which plaintiff was erecting. According to the plaintiff's own testimony, he ascended this ladder by means of the four steps on the side of the ladder farthest from the hole, and proceeded to nail the perpendicular bucks to the ceiling above. In doing this he stepped over the platform, and was standing upon the upper slat on the side of the ladder opposite from the steps, and had substantially completed the nailing of the bucks to the ceiling above. The plaintiff testifies that, as his work was about completed and as he was holding the hammer which he had used in his right hand, some lime or sand from the ceiling above, to which his face had been raised, got into his eye; that, for the purpose of eradicating the foreign substance from his eye, he rubbed it with his hand, and, in so doing, in some manner pitched backward off the ladder and down through the shaft from the seventh floor, on which he was working, to the third floor below. There was no eyewitness of the accident; but, according to the testimony of workmen near at hand who saw the ladder immediately after plaintiff fell, the ladder does not appear to have been moved or disturbed in any way; plaintiff apparently having fallen clear of it. The plaintiff received very serious bodily injuries, maiming him in a more or less serious degree for life and causing him great pain and suffering.

The defendants insist that the verdict rendered by the jury was contrary to law, and should be set aside upon the following grounds:

First. That the unguarded hole left in the floor in process of construction of the building was not the proximate cause of the accident, and that the proximate cause of the accident was either the dust in plaintiff's eye or the fall from the ladder.

Second. That the defendants were not negligent in leaving the hole in question; it being a necessary incident to the erection of the building.

Third. That the evidence does not show the plaintiff to have been free from contributory negligence.

Fourth. That the plaintiff knew that the hole was there and was unguarded, and knew all the conditions existing; and that in going to work there he assumed the risk of his employment.

Considering these several propositions in the order named, I am of the opinion that the unguarded shaft hole was an efficient proximate cause of the accident.

Unquestionably this unguarded shaft hole was not the sole cause of the accident. The dust in plaintiff's eye, the fall from the ladder, and the unguarded hole may all be said to be causes contributing to the occurrence; and all were in their nature proximate causes.

[1] The law is well settled that there may be two or more proximate

causes óf an accident, if each can be said to have been an efficient one without which the injury would not have been sustained. In such a case the test is: Could the accident have happened without the co-operation of these concurring causes? We here have the condition of concurring proximate causes of plaintiff's fall. For one of these causes, namely, the unguarded shaft hole, plaintiff insists defendants are responsible.

[2] Conceding, for the purpose of argument, that the defendants were negligent in leaving the unguarded shaft hole, then it seems to me, under the decisions, that the unguarded hole was an efficient proximate cause of the accident, concurring with the other causes mentioned and without which plaintiff would not have been injured. Ring v. City of Cohoes, 77 N. Y. 83, 33 Am. Rep. 574; Sweet v. Perkins, 196 N. Y. 482, 90 N. E. 50; Ivory v. Town of Deerpark, 116 N. Y. 476, 22 N. E. 1080.

[3] As to the second objection raised by defendants, that the unguarded hole left temporarily during the construction of the building did not constitute negligence on the part of the defendants, it seems to me that the defendants are right in their contention. The evidence discloses that the very day of plaintiff's fall through the unguarded hole workmen had been engaged in attaching metal lath to the I-beams forming the hole, preparatory to plastering the shaft on the inside when the sides had been erected. The evidence also shows that workmen were engaged at the time in installing the conduits through these holes, for which purpose they had been left. The only guard that could reasonably be suggested which would effectually protect workmen in plaintiff's position on the day in question would be that the holes should be covered with plank or other covering. The fact that the workmen were engaged on the very holes themselves, in attaching the metal lathing and in erecting the conduits, would seem to effectually prevent any such guarding. I think the evidence given upon the trial as to any general custom of guarding shaft holes similarly situated as this was not sufficiently clear to establish such general custom as would bind the defendants.

[4] The Employer's Liability Act does not relieve the plaintiff from showing that he, at the time of the accident, was free from any act which contributed to his injury. The plaintiff is just as much bound to show his own freedom from contributory negligence as he is to show that the accident was due to some negligent act of the defendants. In a case where death results, and there is no eyewitness of the accident, very slight evidence and circumstances will justify the inference that the plaintiff was free from contributory negligence. While in this case there does not seem to have been any eyewitness of the accident, and we are left somewhat in the dark as to just how it occurred, except for such light as the plaintiff himself throws upon the transaction, he himself does not seem quite clear as to just what caused his fall, but says he was standing on the upper slat of the ladder on the side toward the hole, there being a bearing of considerably less than one inch beneath his feet, and that, after he had finished nailing the bucks, the dust or sand entered his eye, and, with his ham-

mer held in the right hand, he rubbed the affected eye, presumably with the other hand, and that while so doing he pitched backward and down the shaft. It seems to me that the record is entirely barren of evidence from which the jury could reasonably have said that the plaintiff was exercising due care.

[5] I think the plaintiff failed upon the trial to produce evidence showing that he was free from contributory negligence. Indeed, it would seem from his testimony that he was himself guilty of carelessness, and was not observing that prudence which a reasonably careful man would exercise under the circumstances. He could have accomplished all that he was doing and could have as well nailed his bucks by standing on the step side of the ladder away from the hole, or upon the platform upon the top of it, as he could by placing himself in the far more dangerous position of standing upon the thin slat where he must have been compelled to balance himself to prevent falling. Furthermore, it would have been an easy matter, when it became necessary for him to rub his eye, to have placed the other hand upon the solid structure which he had erected, and which was but a few inches from him and well within his grasp. Indeed, his failure to do this would seem to disregard entirely that care and prudence which a reasonably careful man would have observed under the circumstances.

As to whether or not the plaintiff assumed the risk of his employment, while undoubtedly the question was for the jury to decide, it seems to me their verdict in that respect was contrary to the evidence. The plaintiff himself, with great particularity, described the hole from his observation of it prior to the accident. He knew it was there. He knew it was unguarded. He understood and appreciated all the surrounding conditions. He must have known and appreciated all the dangers incident to his work upon the stepladder, and it seems to me must be said to have assumed the risk of his employment. Rooney v. Brogan Construction Co., 194 N. Y. 32, 86 N. E. 814.

The accident to plaintiff was a most painful one and resulted in maiming him for life, but I am unable to find that the injuries which plaintiff sustained were due to any negligence on the part of the defendants, but find that such injuries were the direct result of plaintiff's failure to observe due care on his part, and that the risk of his employment was a necessary one which he assumed when he undertook the work.

Entertaining these views, I must set aside the verdict of the jury, and order a new trial.

Motion granted.