[No. 15948.   Department Two.   January 8, 1921.]

O. H. Anderson, *Appellant, v.* W. G. McLaren *et al.,*
*Respondents.*[1]

Municipal Corporations (389, 390)—Streets—Automobile Collision—Evidence—Sufficiency. It is error to dismiss an action for damages to plaintiff's automobile which was bumped by defendant while it was parked at the curb where it had a right to be, where the evidence tended to show that defendant's car could and should have been stopped in time to avoid the collision, if defendant was driving as slowly as she claimed and had not been confused and lost control of herself and of her car.

Appeal from a judgment of the superior court for King county, Tallman, J., entered December 1, 1919, upon findings in favor of defendants, in an action for damages sustained in an automobile collision, tried to the court. Reversed.

*Roberts & Skeel* and *L. B. Schwellenbach,* for appellant.

*James B. Murphy,* for respondent Model Transfer Company.

*Farrell, Kane & Stratton,* for respondents McLaren.

Holcomb, C. J.—Through no fault of his, appellant's car, while standing lengthwise alongside the curb, on the west side of Sixth avenue, Seattle, sixty feet north

of the Union street intersection of Sixth avenue, was run into by a car driven by Mrs. McLaren and owned by respondents McLaren. The accident occurred on the afternoon of April 14, 1919. Appellant's car was unoccupied and motionless. He had the right to stand his car in that location.

Mrs. McLaren drove into the car of appellant while trying to avoid a collision with a Ford truck owned by the other respondent, the Model Transfer Company of Seattle, which was being driven out from the curbing on the east side of Sixth avenue across the street between street intersections, until it crossed half, or a little over half, the width of the street. The street was forty-two feet wide and was paved.

The trial court found and concluded that neither respondent was negligent; that the accident occurred through the fault of nobody; that the action should be dismissed with prejudice; and that the innocent owner of the bystanding car should pay the costs of the defenses. His motion for a new trial having been unsuccessfully made, appellant prosecuted this appeal from the judgment of dismissal entered by the trial court.

On the east side of Sixth avenue, and at a point nearly opposite the place where appellant's automobile was standing, the Ford truck, owned and operated by respondent Model Transfer Company was backed up against the curb. Mrs. McLaren was driving her Dodge touring car north on the east side of Sixth avenue. She proceeded across the Union street intersection at a speed of about ten or twelve miles an hour. When she was somewhere between this street intersection and the place where the Ford truck stood, Nissen, the driver of the truck, started it out from the curb against which it had been backed.

The testimony of Mrs. McLaren and of Mrs. Parker, who was riding with her in the Dodge automobile, was to the effect that several other Ford trucks were standing against the curb on the east side of Sixth avenue between Union street and the place where the Ford truck came out. That there were any other automobiles standing along this place, is denied by the driver of the Ford truck and the young man riding with him. There was at least one automobile, and perhaps others, on the opposite, or west, side of Sixth avenue, near appellant's car. The driver of the Ford truck started it out from the curb at about the time that Mrs. McLaren reached the street intersection, from sixty to seventy-five feet away from him. He says he saw her car at this distance and that, inasmuch as, according to his testimony and that of his companion on the truck at that time, there were no other cars along the curb south of him to the Union street intersection, she had a clear view of his car as it started out. Mrs. McLaren testified that she did not see the Ford truck until her car was within about ten feet of it, she and her companion claiming, as already noticed, that other trucks were standing just south of the Ford truck in question. The truck driver testified that, after the truck had proceeded about six feet out from the curb, he stopped it to allow Mrs. McLaren to go ahead of him; that she turned as if to pass in the rear of the truck, and he started ahead again to give her room to do so; that she then swung her car to the west with the intention of going ahead of him, so he stopped the Ford truck again; and that her car crashed into appellant's Buick car.

Mrs. McLaren's version of what occurred was to the effect that she was driving north along the east side of Sixth avenue, close in to the other trucks, which she says were standing there (and which Nissen de-

nies.), when for the first time she saw the Ford truck driven by Nissen as it started out from the curb; that she was at that time about ten feet from this truck; that she thought that, if she did not turn she would strike the truck and perhaps she and Mrs. Parker would be killed, so she swerved to the west, or left; that she saw a number of cars standing on the west side of Sixth avenue and knew that, in swerving to the left, she had to hit one of them; that, immediately upon seeing the Ford truck, she applied her brakes, then swerved to the left and collided with appellant's car.

Mr. Wolff, a witness called by appellant, testified that, just before the accident, he had driven his car up behind appellant's car and parked it there; that he happened to look up and see the Ford truck coming out from the curb on the other, or east, side of the street, and the Dodge car driven by Mrs. McLaren as it came up the street on the east side; that the two cars were close to each other when the one backed and the other swerved over, as already related.

Mrs. Parker said that the distance from where the Ford truck came out in front of the McLaren car to the place where appellant's Buick car stood was about fifteen feet; that she thought Mrs. McLaren could have stopped her car within a distance of ten feet if it had not been for the down grade of the street at the point where the accident occurred; that,

"We (the McLaren car) bumped this Buick slowly. It was due to the momentum of her car, but the car being against the curb and our car moving—the impact was hard on the Buick."

The record shows that there is a down grade of 5.6 per cent on Sixth avenue from Union street north to Pike street; that the curb at the northeast corner of Sixth avenue and Union street is one foot higher than

the intersection of the curbs at the northwest corner of those thoroughfares.

Nissen and Smith—Smith was the young man who was riding on the truck with Nissen at the time of the accident—were qualified as expert witnesses, and testified that, assuming that Mrs. McLaren was driving north on Sixth avenue at about ten miles an hour, that there was a down grade to the north of 5.6 per cent, that the west curb was a foot lower than the east curb, that the pavement was dry, and that the brakes on the McLaren car were in good condition (as Mrs. McLaren testified they were); then, under such circumstances, the Dodge car could have been stopped in about twelve or fifteen feet.

The testimony went to show that, just before the collision, Mrs. McLaren was driving her car at the rate of about ten miles an hour. She herself testified that she was positive that her car was not going more than ten miles an hour. She was on the east side of the street, according to her own and other testimony, at the time she first saw the Ford truck, and about ten feet from it, as she says. Moreover, appellant's car was on the opposite, or west, side of the street, and a little to the north of her car. Under such circumstances, her car must have been at least twenty feet from appellant's car, if not farther. This distance, according to the undisputed testimony of Nissen and Smith, was more than sufficient within which she might have stopped her car by the prompt and proper use of her brakes, which she had testified were "working nicely."

Mrs. McLaren's testimony would indicate that she became confused. The conclusion is almost irresistible that she lost control of herself and of her car; otherwise, she had sufficient distance within which to stop her car before it should collide with appellant's car.

*Allen v. Schultz,* 107 Wash. 393, 181 Pac. 916; *Ebling.
v. Nielsen,* 109 Wash. 355, 186 Pac. 887.

We are satisfied, also, that the transfer company, through its driver, wrongfully set in motion the train of causes which combined to produce the damage, and cannot escape the consequences. The driver, Nissen, testified that, when starting out from the curb, with his twelve-foot truck cross-wise of the narrow street, he did not sound his horn, signal with his arm, or give any other warning. He said the reason he did not was that he was in plain view all the time. That may be true, but the testimony of other credible witnesses is that there were other trucks or cars backed up to the curb on the east side of Sixth avenue, and some of them between his car and the Union street intersection; so that one driving from that direction toward him might well believe that he would not start immediately or dart out at high speed in front of a closely approaching car.

Provisions of the city ordinance of Seattle, No. 37,-434, relating to traffic are as follows:

"Sec. 31. Before turning, whether from a standstill or while in motion, stopping or decreasing speed, drivers shall give timely warning of their intentions to those following them, by outstretched arm or in some unmistakable manner."

"Sec. 21. A vehicle, except when passing the vehicle ahead, shall keep as near the right hand curb as practicable so as to leave the center of the street free and open for overtaking traffic."

"Sec. 52. No driver shall enter any street from any point other than a street intersection at a rate of speed faster than five miles per hour, nor without first attracting the attention of approaching pedestrians and vehicles."

Nissen violated all these traffic ordinances. He claims there was room behind him, when he reached

the center of the street, for Mrs. McLaren to pass between him and the curb; yet he admits that there was a Paige automobile parked by the curb at right angles to the street immediately to the right of the place where he had parked his car. That testimony is therefore highly improbable.

We therefore hold that each and both of the respondents contributed to the injury and damage.

There was not much contest over the actual damages. Appellant used his car as a means of transportation in his business as manager of a number of grocery stores. The injury necessitated repairs costing the undisputed sum of $194.65. As a result of the injury, his car was out of business and under repair for a necessary period of thirty-one days, during which time he was compelled to hire another car to take the place of his own; for which hired car he was compelled to pay seven dollars per day, or $217. The evidence as to depreciation in value of his own car after the injury and the necessary repairs, is uncertain.

We conclude that the judgment should be reversed, both respondents adjudged liable, jointly and severally, and that appellant shall recover of and from the community of respondents McLaren, and the Model Transfer Company of Seattle, a corporation, jointly and severally, the sum of $411.65, with costs of action and of appeal.

It is so ordered.

MOUNT, MITCHELL, TOLMAN, and MAIN, JJ., concur.